UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| - v. - | : | 13 Cr. 316 (JPO) |
| | : | |
| DANIEL HIGHTOWER, | : | |
| | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**GOVERNMENT'S SENTENCING MEMORANDUM**

PREET BHARARA
United States Attorney
Southern District of New York
Attorney for the United States of America

Megan Gaffney
Assistant United States Attorney
    - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| - v. - | :   13 Cr. 316 (JPO) |
| | : |
| DANIEL HIGHTOWER, | : |
| | : |
| Defendant. | : |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## GOVERNMENT'S SENTENCING MEMORANDUM

The Government respectfully submits this memorandum in advance of the defendant's sentencing, which is scheduled for January 29, 2014, at 4:00 p.m.[1]  For the reasons set forth below, the Government respectfully submits that a sentence that upwardly varies from the Guidelines range of 41 to 51 months is appropriate.

## BACKGROUND

**I.      The Offense Conduct**

On January 26, 2013, at 5:10 p.m., the defendant was captured on surveillance video leaving an apartment building located at 4278 Third Avenue in the Bronx.  (*See* PSR ¶ 8).  The defendant walked north on East 179th and, at 5:13 p.m., was in the vicinity of 459 East 179th Street.  (*See id.*).  The defendant then brutally attacked a U.S. Postal Service employee who was delivering mail to the cluster box outside of that address.  (*See id.* ¶ 6).   An eyewitness saw the defendant punch the victim and kick her in the head while the victim lay on the ground.  (*Id.*).  When the individual yelled at the defendant, he fled back to the apartment building at 4278 Third Avenue in the Bronx.  (*See id.* ¶¶ 6, 8).   Surveillance video captured images of the

---

[1] As of the date of this submission, the defendant has not filed his sentencing submission in this case.  The Government reserves the right to respond at the sentencing proceeding to any arguments raised by the defendant in any eventual submission.

defendant at the apartment building, with a bright red substance on his shoe (later confirmed by

forensic analysis as the victim's blood).  (*See id.* ¶ 9).

The victim was taken to St. Barnabas Hospital in the Bronx.  (*Id.* ¶ 7).  The

attending physician reported the victim suffered brain swelling and bleeding, a fractured eye

socket, and lacerations to her lips and both cheeks.  (*Id.*).[2]  As of November 2013, the victim still

has not returned to work and receives worker's compensation benefits.  (Victim Letter, PSR at

26; PSR ¶ 13).  The victim reports that she attends physical therapy three times a week, as well

as seeing a psychologist once a week, a psychiatrist to address panic attacks, anxiety, and lack of

sleep, and a neurologist once a month for painful headaches.  (Victim Letter, PSR at 26).  The

victim still suffers from a bulging disk in her neck and shoulders, and pain in her left hand.  (*Id.*).

## II.      The Defendant's Guilty Plea

The defendant was charged with assaulting a federal employee while in the

performance of her official duties and causing bodily injury, in violation of 18 U.S.C. §

111(a)(1) and (b).  (PSR ¶ 1).  On September 5, 2013, the defendant pleaded guilty to the

indictment pursuant to a plea agreement with the Government.  (*Id.* ¶ 2).

## III.     The Defendant's Criminal History

The defendant's criminal history is marked by repeated acts of violence.

On March 22, 2001, the defendant was convicted of Robbery in the First Degree

in Bronx County Supreme Court.  (PSR ¶ 32).  The defendant, along with his cousin and 16-

year-old sister, forced their way into a suspected drug dealer's home.  (*Id.* ¶ 34).  Once inside,

the defendant's cousin argued with the drug dealer, and then pulled a knife and stabbed the drug

---

[2] The Government includes photographs of the victim the day after her assault and the crime
scene as Exhibits A through E to this submission, but requests that these exhibits be filed under
seal in an effort to protect the victim's privacy.  *See, e.g.*, *United States* v. *Starr*, 10 Cr. 520,
2011 WL 1796340 (S.D.N.Y. May 2, 2011).

dealer and his mother. (*Id.*). The defendant and his cousin and sister fled the apartment with $1,398 and the drug dealer's nine-shot .22 caliber revolver. (*Id.*). The defendant—who was identified in the arrest report as being affiliated with the "Bloods" gang—was sentenced to five years' imprisonment. (*Id.* ¶¶ 32-33). After serving around three years, the defendant was released on parole. (*Id.* ¶ 32). His parole was revoked and he was returned to state custody. (*Id.*). The defendant was then re-paroled, but that too was revoked. (*Id.*). The defendant was eventually paroled on the maximum expiration date. (*Id.*). Pursuant to U.S.S.G. §§ 4A1.1(a) and 4A1.2A(e)(1), this conviction results in three criminal history points. (*Id.*).

On November 2, 2012, the defendant was convicted of Criminal Possession of a Weapon in the Fourth Degree in Bronx County Supreme Court. (*Id.* ¶ 35). The defendant had an argument with the mother of one of his children. (*Id.* ¶ 36). During the course of the argument, the defendant choked and punched her. (*Id.*). When the victim attempted to call 911, the defendant took a .25 caliber handgun, put it to the victim's head, and took her cellphone. (*Id.*). The victim's young children were present for the assault. (*Id.*). This was not the first act of violence by the defendant against the victim—she reported that, before the incident with the gun, the defendant had assaulted her, causing her to suffer a bloody lip and small laceration to her elbow. (*Id.*). The defendant was sentenced to nine months' imprisonment. (*Id.* ¶ 35). Pursuant to U.S.S.G. §§ 4A1.1(b) and 4A1.2A(e)(2), this results in two criminal history points.

In addition to the above offenses, both the defendant's wife and the mother of one of his children (the victim in the incident described above) have been issued orders of protection against the defendant. (*Id.* ¶ 37).

The defendant also has a charge for Robbery in the Second Degree pending in Bronx County Supreme Court. (*Id.* ¶ 39). According to the NYPD arrest report, the defendant

and his brother punched a victim in the face and stole his iPhone, and attempted to remove forcibly an iPhone from a second victim.  (*Id.* ¶¶ 40-41).

In accordance with the above offenses, the defendant has five criminal history points, which results in a Criminal History Category of III.

### IV.      Potential Penalties

The defendant faces a statutory maximum of 20 years' imprisonment.  (PSR ¶ 66 (citing 18 U.S.C. § 111(a)(1) and (b))).  The defendant also faces a maximum term of supervised release of three years (*id.* ¶ 69 (citing 18 U.S.C. § 3583(b)(2))), and a maximum fine of $250,000 (*id.* ¶ 73 (citing 18 U.S.C. § 3571))).

In addition, full restitution to the victim is required under 18 U.S.C. § 3663A and 18 U.S.C. § 3664.  (*Id.* ¶ 76).  The victim is seeking $7,573 in restitution, representing lost wages and lost property.  (*Id.* ¶¶ 14, 76).

### V.       Applicable Guidelines

Under U.S.S.G. § 2A2.2(a), the base offense level is 14.  Because the victim sustained permanent and life-threatening bodily injury from the assault, the offense level is increased by seven levels, pursuant to U.S.S.G. § 2A2.2(b)(3)(C).  The defendant pleaded guilty to a violation of 18 U.S.C. § 111(b), and, pursuant to U.S.S.G. § 2A2.2(b)(6), two offense levels are added.  This brings the defendant's offense level to 23.

Because the defendant pleaded guilty in a timely manner, and because the offense level is over 16, the offense level is reduced by three levels pursuant to U.S.S.G. § 3E1.1(a) and (b).  This brings the total offense level to 20.

With a Criminal History Category of III and offense level 20, the appropriate Guidelines range is 41 to 51 months' imprisonment.

The Probation Office recommends a sentence of 51 months, at the top of the Guidelines. *See* PSR at 19-20 ("Pursuant to the sentencing factors of 18 U.S.C. [§] 3553(a), including the need to protect the public from further crimes of the defendant, we believe that the maximum Guidelines terms of imprisonment and supervised release are warranted.").

## DISCUSSION

### A.    An Above-Guidelines Sentence is Warranted

A district court is empowered to sentence a defendant above the designated Guidelines range, provided the sentence complies with the Section 3553(a) factors. *United States* v. *Douglas*, 713 F.3d 694, 700 (2d Cir. 2013) (affirming above-Guidelines sentence, and noting the Second Circuit's "flexible approach that allows consideration of the facts of an individual case"); *see, e.g.*, *United States* v. *Gilliard*, 671 F.3d 255, 260-61 (2d Cir. 2012) (affirming above-Guidelines sentence where district court "properly considered" the defendant's "extensive criminal history . . ., the facts and circumstances of his crime and [] his high likelihood of recidivism and the need to deter him from committing future crimes"). This is so even when the defendant's Guidelines calculation includes enhancements relevant to the conduct at issue. *See United States* v. *Kaye*, 23 F.3d 50, 53 (2d Cir. 1994) (affirming above-Guidelines sentence, noting that while the "guideline adequately considers the *kind* of harm suffered by [the victim]," the Second Circuit "d[id] not think that the . . . guideline adequately considers the *degree* of harm she suffered" (emphasis in original)).

This case presents precisely the circumstances under which an above-Guidelines sentence is appropriate.[3]  The Section 3553(a) factors support an upward variance from 41 to 51 months.

### 1.    The History and Characteristics of the Defendant

Section 3553(a)(1) instructs the district court to consider "the history and characteristics of the defendant" when imposing sentence. 18 U.S.C. § 3553(a)(1). Here, as Probation observed, the defendant's history is defined by repeated acts of violence. (*See* PSR at

---

[3] In accordance with the policies and procedures of the United States Attorney's Office for the Southern District of New York, the undersigned sought and received permission from the Chief of the Criminal Division to seek an above-Guidelines sentence in this case.

19 ("Hightower's prior offenses and pending charges all have elements of violence.")).[4]  These

acts of violence are not minor.  In 2000, the defendant and two of his family members invaded a

man's home, stabbed the victim and his mother, and stole the victim's gun and money.  (*Id.* ¶¶

32-34).  He was convicted of Robbery in the First Degree.  (*Id.* ¶ 32).  In 2012, the defendant

brutally assaulted the mother of one of his children; he choked her, punched her, and put a gun to

her head, all in front of her young children.  (*Id.* ¶¶ 35-37).  He was convicted of Criminal

Possession of a Weapon in the Fourth Degree.  (*Id.* ¶ 35).  Notably, every conviction the

defendant has sustained—including for the instant offense—has featured violence against

women.

        The defendant's violence against women is not limited only to the crimes for

which he has been convicted.  In addition to his prior crimes, the defendant has had multiple

orders of protection granted against him.  (PSR ¶ 37).  All of this is consistent with the

defendant's dangerous hostility towards women that was displayed in such sharp relief in this

instant offense.

        Unfortunately, the defendant's criminal history category does not sufficiently

reflect the extent of his violence towards women, and thus a sentence that varies upward from

the Guidelines range is appropriate.

        2.   Reflection of the seriousness of the offense, promotion of respect for the law,
             and providing just punishment for the offense

        Under Section 3553(a)(2), an appropriate sentence must "reflect the seriousness

of the offense, . . . promote respect for the law, and . . . provide just punishment for the offense."

18 U.S.C. § 3553(a)(2)(A).  The defendant's instant offense is vicious and senseless.  After

---

[4] Even the defendant's mother said in her interview with Probation that when the defendant
consumes alcohol "it flips him" and he "takes things out of proportion," and noted that the
defendant needs counseling so he can move past "what has built up in him."  (PSR ¶ 53).

spotting his victim delivering the mail, the defendant approached her from behind.  He punched her with an uppercut, knocking her to the ground, as her blood sprayed on his jacket.  It was a cold January day, and the victim was bundled up in an attempt to stay warm, with only her face and head exposed.  Once she was down on the ground, the defendant targeted his attack where she was most vulnerable, kicking her repeatedly in her face and head, soaking the toe of his Timberland work boot with her blood.  The defendant's kicks fractured the victim's eye socket, broke her teeth, and split the flesh on her face and inside her mouth.  This gruesome assault lasted approximately three minutes before an eyewitness called out after the defendant and scared him away from the victim, who lay on the sidewalk, unconscious.  As the victim was rushed to the hospital, her face swollen and distorted beyond recognition, a large pool of her blood remained on the sidewalk, penetrating the cracks in the pavement.  Once in the hospital's Intensive Care Unit, the victim was placed in a cervical collar, and medical staff gave her CAT scans and tests every two hours to monitor her brain swelling and bleeding on her brain.

Surveillance video shows the defendant jogged from the scene.  Once he was far enough away from the pursuing eyewitness, he slowed his pace and began casually walking back to the apartment building where his trip originated.  At no point in the video did his face display any emotion or even recognition of the heinous crime he had just committed.  Only his boot—clean when he left the building and stained with red on his return—bore witness to his offense.  He entered the apartment building with no urgency, mere moments after leaving the victim cold and bleeding on the sidewalk.

With no perceivable motive—no evidence even that the defendant knew the victim—the defendant changed the victim's life forever in a matter of minutes.  (*See* Victim Letter, PSR at 26 ("My life has completely changed since January 26, 2013.")).  The victim is

unable to work, both for physical and psychological reasons, and her days are spent seeing physicians and specialists in an attempt to overcome this attack and slowly rebuild her life. (*See id.*). And this outcome, this life sentence for the victim, is a positive one; when she was admitted to the hospital immediately after the attack, suffering from brain swelling and bleeding on her brain, it was not clear that she would survive.

The Guidelines range does not reflect the seriousness of this brutal assault, nor does it provide just punishment. Under the Guidelines, the defendant could be released in a little over three years, whereas the victim in this case will be dealing with the aftermath of the defendant's attack for the rest of her life. While even an above-Guidelines sentence will never be able to address this fundamental injustice, it would reflect recognition of this disparity.

### 3. Affording Adequate Deterrence to Criminal Conduct

Section 3553(a)(2) also requires a sentence to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). A review of the defendant's criminal history shows that he has not been sufficiently deterred from acts of violence during any of his multiple run-ins with law enforcement. Despite serving more than five years of his adult life in jail,[5] the defendant has not stopped committing horrific acts of violence against strangers and intimate partners alike. Nor has the defendant respected the reasonable constraints placed on his liberty as a consequence of his crimes.[6] A significant term of imprisonment is necessary to attempt to deter him from continuing his pattern of relying on violence to accomplish his ends.

---

[5] The defendant is only 33 years old. (PSR ¶ 42).

[6] The defendant has had his parole revoked twice. (PSR ¶ 32). Also of note, the apartment building that the defendant left and returned to on the day of the attack is the home of the mother of one of his children, who has had multiple orders of protection taken out against the defendant and who was terrorized by the defendant in the assault that formed the basis of his 2012 conviction for Criminal Possession of a Weapon in the Fourth Degree. (*See id.* ¶¶ 35-37).

4.   <u>Protection of the Public from Further Crimes of the Defendant</u>

Under Section 3553(a)(2), a sentence must "protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(C).  The defendant's repeated use of such violence supports an above-Guidelines sentence for purposes of protecting the public from the defendant's further crimes.  In addition to the two violent crimes for which he was previously convicted, and the instant offense, the defendant also has a violent robbery case pending in the Bronx.  (PSR ¶¶ 39-41).  The defendant is also the subject of orders of protection from his former partners.  (*Id.* ¶ 37).

All of this is background to the savagery displayed in the instant offense.  As the victim in this case so poignantly relayed in her letter to Probation:

> I have never experienced such violence, pain, confusion or destruction in my life until that very cold day in January – The day that Daniel Hightower had nothing else better to do with his time.  He consciously decided to attack me, a postal worker that was simply doing her job.  He changed my life in an instant.  I am so blessed and thankful for the eyewitness that saw something and said something.  Those actions saved my life.  Only God knows what one more kick or punch would have done to me.  I am truly blessed to be alive.

Victim Letter, PSR at 26.

The victim is right—the defendant did not stop his violence until he was pursued by the eyewitness, mere minutes after the attack began.  (*See* PSR ¶¶ 6, 8).  Without that fateful intervention, the victim very well could have died.  What the defendant displayed in those few minutes was pure, unadulterated rage.  The public needs protection from someone so cavalier and dismissive of human life, so uncontrolled in his anger, and seemingly so arbitrary in his attacks.  Probation recognized this explicitly in its recommendation, noting that "[p]ursuant to the sentencing factors of 18 U.S.C. [§] 3553(a), *including the need to protect the public from*

10

*further crimes of the defendant*, we believe that the maximum Guideline terms of imprisonment and supervised release are warranted."  (PSR at 20 (emphasis added)).

Throughout this entire case, even during his plea allocution where he admitted to beating the victim, the defendant has never offered an explanation why.  (*See* PSR ¶¶ 16-17). The victim will spend the rest of her life grappling with that question.[7]  The senselessness of this crime, along with the defendant's violent past, support a sentence that will endeavor to protect the public from future crimes of the defendant.

## CONCLUSION

For the reasons set forth above, the Government respectfully submits that a sentence that upwardly varies from the Guidelines range of 41 to 51 months is appropriate.

Dated:        New York, New York
              January 23, 2014

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney


                              By:   _/s/_____
                                        Megan Gaffney
                                        Assistant United States Attorney
                                        (212) 637-2105

_____

[7] *See* The National Center for Victims of Crime, "The Trauma of Victimization," (2008) ("[T]he recovery process can be extremely difficult.  It can take a few months or years – or an entire lifetime. . . . Victims never completely forget about the crime.  The pain may lessen and even subside, but their lives are changed forever.").

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney, duly admitted to represent the United States before this Court, hereby certifies that on the below date, she caused the Government's Sentencing Memorandum be served on counsel for the defendant via ECF and email.

Dated:        New York, New York
              January 23, 2014

                                        Respectfully submitted,


                                        ___/s/_____
                                        Megan Gaffney
                                        Assistant United States Attorney